The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award except with respect to the measure of damages. The Full Commission therefore affirms the Decision and Order of the Deputy Commissioner except with respect to damages. The parties made the following stipulations in a pretrial agreement dated October 13, 2000:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq.
2. On or about September 22, 1994 at approximately 7:16 a.m. a collision occurred between the vehicle being operated by the plaintiff in this action and a Norfolk Southern train at the Morrisville-Carpenter Road railroad crossing located in Morrisville, North Carolina.
3. The parties stipulated into the evidence in this matter exhibits one through three, which consist of damages invoices, accident reports, discovery responses and documents and requests for admissions, internal DOT documents, and photographs. In addition, plaintiff introduced and the Full Commission admitted into evidence in this matter what was marked as plaintiff's exhibit three, which consists of three pages setting forth additional tractor damages. Defendant introduced and the Full Commission admitted into evidence what was marked as defendant's exhibit one, the truck route ordinance and designations. The Full Commission also takes judicial notice of N.C. Gen. Stat. § 20-116.
4. The issues to be determined as a result of this hearing are whether defendant, North Carolina Department of Transportation (hereafter "DOT"), through its agents and employees, was negligent in causing the accident that resulted in plaintiff's damages through its alleged failure to properly maintain the safety of the railroad crossing, including erecting signage. Defendant has raised a further issue as to whether plaintiff acted with necessary and proper care when operating his tractor trailer, or did he negligently contribute to the accident causing his alleged damages.
 ***********
The Industrial Commission is not bound by the stipulation of the parties, however, and is free to make its own findings with respect to the stipulated damages.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. In 1994, plaintiff, who lives in New York State, was an independent tractor-trailer operator. On occasion he was leased to Allied Van Lines to haul household goods for this company's customers. Plaintiff owned the tractor and the trailer that he used to haul under contract to Allied Van Lines, and he had been doing this sort of work for 30 years.
2. On September 22, 1994 plaintiff was under contract with Allied, transporting household goods in his trailer for a family that was moving from New Jersey to Cary, North Carolina. That morning plaintiff, using directions he had received from the customer whose goods he was transporting, exited Interstate 40 and proceeded south on Aviation Parkway. Aviation Parkway intersects with Highway 54, which runs east-to-west. Following the directions he had been given, plaintiff took a left onto Highway 54 from Aviation Parkway.
3. Only 276 feet after turning onto Highway 54, plaintiff took a right turn onto Morrisville-Carpenter Road to continue traveling southbound. A few feet after turning onto Morrisville-Carpenter Road, which is inclined, there is a railroad crossing. When plaintiff attempted to cross the railroad tracks, the underside of his trailer dragged and became lodged on the railroad tracks. Despite his efforts, plaintiff was unable to dislodge the trailer from the railroad tracks.
4. While plaintiff was attempting to dislodge his tractor-trailer, a train approached, and the railroad crossing arms came down between the tractor and the trailer. Plaintiff immediately exited the tractor and stood behind a utility pole and watched. The Norfolk Southern train proceeded to crash into plaintiff's tractor-trailer, doing extensive damage to the tractor, the trailer, and the contents of the trailer.
5. The Full Commission finds the reasonable damages to plaintiff's tractor were in the amount of $5,973.63. Reasonable damage to the trailer was $9,625.00.
6. The Full Commission finds the reasonable damages due to equipment lost in the accident and expenses incurred locating a substitute trailer and equipment came to a total value of $4,500.00.
7. The Full Commission finds the reasonable damages due to wrecker fees, site clean-up costs, and storage fees totaled $1,700.00.
8. The Full Commission finds the reasonable damages due to plaintiff's lost income as a result of inability to work for Allied or any other carrier from September 22, 1994 through November 18, 1994 was $21,000.00. The damages estimated by plaintiff were based on gross income rather than net income and the Full Commission based its damage award on net income.
9. Plaintiff did not suffer any personal injuries as a result of the accident on September 22, 1994.
10. Plaintiff, who had never been in North Carolina prior to this incident, had no driving directions to his destination other than the ones provided by the Allied customer.
11. On September 22, 1994, and in the months shortly thereafter when an investigation was done of the crash site on southbound Aviation Parkway there were no warning signs or even signs notifying drivers of an impending railroad crossing.
12. Motorists driving east on Highway 54 were given warning signs of an impending railroad crossing and a warning sign that indicates, "low vehicles may drag." These warning signs were given for both the Morrisville-Carpenter Road railroad crossing and also for a railroad crossing at Ashe Street.
13. Likewise, motorists driving west on Highway 54 were provided with railroad crossing and low drag warning signs for the Morrisville-Carpenter Road railroad crossing, but not for the Ashe Street crossing.
14. There were the same railroad crossing and low drag warning signs for motorists driving north on Morrisville-Carpenter Road prior to the railroad crossing.
15. There were no warning signs of any kind between the intersection at Aviation Parkway and the Morrisville-Carpenter Road railroad crossing; therefore, plaintiff could not have been warned that the grade crossing on the Morrisville-Carpenter Road railroad crossing was low and that his vehicle was in danger of dragging. There was no contributory negligence on the part of plaintiff.
16. Motorists waiting at the T-shaped intersection of Aviation Parkway and Highway 54 were not given notice of railroad crossings that are both to the left and the right of the intersection. Instead, straight ahead was a regulatory sign indicating that a truck route was to the right, or, west on Highway 54.
17. While the State strenuously argues that plaintiff was contributorily negligent by his failure to follow the truck route as indicated in the sign in the intersection of Aviation Parkway and Highway54, it is significant that plaintiff had no other directions to his destination and was not familiar with North Carolina or its roads. More importantly, however, is the fact that because his job was to deliver household goods and furnishings to peoples' residences, his job frequently required him to travel on roadways that are not designated as truck routes. Moreover, plaintiff had no indication that his choice of routes would cause him to encounter potential danger due to defendant's lack of adequate signage from a major highway, Interstate 40, to the location in question. Due to the combination of these reasons, plaintiff's decision to travel over the Morrisville-Carpenter Road railroad crossing cannot be considered negligent behavior.
18. Defendant also argues that plaintiff should have recognized the potential danger in passing over the Morrisville-Carpenter Road railroad crossing by his visible inspection of the same and also because a weight limit sign was posted near the railroad crossing. However, there was no signage on Aviation Parkway or even on Highway 54 indicating the maximum gross vehicle weight or axle load limits. Instead, the only sign posting these limits was placed beyond, not before, the railroad crossing. Moreover, regarding his visible inspection of the crossing, plaintiff, who at the time had 30 years experience as a tractor-trailer driver, did not feel that the crossing looked dangerous or presented any hazard, particularly with the absence of signage to indicate to him the potential danger. In his over 30 years of experience driving a tractor-trailer, plaintiff had never gotten his trailer stuck on a railroad crossing.
19. There is insufficient evidence of record from which the Full Commission can find by its greater weight that plaintiff violated N.C. Gen. Stat. § 20-116(h).
20. The State, through the Department of Transportation, has a duty and responsibility to inspect railroad crossings for safety, and to erect adequate signage at or near railroad crossings that may pose a potential danger or hazard warn the public of such potential danger or hazard.
21. The State was on notice that the railroad crossing at Morrisville-Carpenter Road was hazardous. In fact, on November 29, 1993 a tractor-trailer became lodged on the very same railroad crossing and was struck by a train. In addition, studies were done prior to plaintiff's accident that corroborated the potential danger for low vehicles dragging at the Morrisville-Carpenter Road railroad crossing.
22. The employees of the State named as the negligent parties to this action were Garland B. Garrett, David Allsbrook, Patrick B. Simmons, as well as unknown employees of Department of Transportation who were directly responsible for maintaining the safety of the Morrisville-Carpenter Road railroad crossing.
23. The Department of Transportation employee, Brian Pleasants, who was responsible for placing signage in the general area that is the subject of this claim, was not instructed to place a waming sign at the intersection of Aviation Parkway and Highway 54. There is no physical reason why the appropriate signage could not have been placed either at the intersection in question or elsewhere on southbound Aviation Parkway.
24. Despite being aware of the potential danger to motorists, and despite its duty to do the same, defendant through its employees and agents failed to place adequate signage at and near the Aviation Parkway/Highway 54 intersection that would warn motorists traveling from this direction, or those motors traveling southbound on Aviation Parkway, that a potentially dangerous railroad crossing was imminent. This failure to erect adequate signage was the proximate cause of plaintiff's September 22, 1994 accident. Plaintiff's expert witness corroborates this assessment.
 ***********
The foregoing stipulations and findings of fact result in the following:
 CONCLUSIONS OF LAW
1. Defendant North Carolina Department of Transportation, through its employees and/or agents, was negligent when it failed to erect adequate signage on southbound Aviation Parkway or on Highway 54 between the intersection of Aviation Parkway and Morrisville-Carpenter Road to warn motorists of the danger of low vehicles dragging due to the grade of the railroad crossing. This negligence was the proximate cause of plaintiff's accident and resulting property damage on 22 September 1994. N.C. Gen. Stat. § 143-291 et seq.
2. Plaintiff was not contributorily negligent in the accident of September 22, 1994. N.C. Gen. Stat. § 143-299.1.
3. Because of defendant's negligence, the State is liable to plaintiff Samuel S. Smith for damages in the amount of $42,498.63.
 ***********
The foregoing findings of fact and conclusions of law result in the following:
 ORDER AND AWARD
1. For the reasons set forth herein, the State's motion to dismiss is HEREBY DENIED.
2. The State shall pay plaintiff damages in the amount of $42,498.63.
This 26th day of November 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER